1
2
3
4
5

# UNITED STATES DISTRICT COURT

6

## DISTRICT OF NEVADA

7

JACQUELINE MARTIN,                          )
                                            )        Case No. 2:12-cv-00730-JCM-PAL
8                       Plaintiff,           )
                                            )        **REPORT OF FINDINGS AND**
9   vs.                                      )        **RECOMMENDATION**
                                            )
10  CAROLYN W. COLVIN,[1]                    )        (Mtn to Remand- Dkt. #20)
                                            )        (Mtn to Affirm - Dkt. #23)
11                      Defendant.           )
   _____)

12

13        This case involves judicial review of administrative action by the Commissioner of Social

14  Security denying Plaintiff Jacqueline Martin's claim for Supplemental Security Income ("SSI") benefits

15  under Title II of the Social Security Act (the "Act").

16                                    **BACKGROUND**

17        On May 20, 2009, Plaintiff filed her application for SSI benefits, alleging she became disabled

18  on May 1, 2009.  AR[2] 112.  The Social Security Administration ("SSA") denied Plaintiff's application

19  initially and on reconsideration.  AR 77-80, 81-83.  A hearing before an administrative law judge

20  ("ALJ") was held on September 16, 2010.  AR 54-69.  In a decision dated November 1, 2010, ALJ John

21  Heyer found Plaintiff was not disabled.  AR 17-24.  Plaintiff requested review of the ALJ's decision by

22  the Appeals Council.  AR 111.  The ALJ's decision became the Commissioner's final decision when

23  the Appeals Counsel denied review on March 1, 2012.  AR 1-3.

24  / / /

25

26        [1]Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on
27  February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for
    Michael J. Astrue as the Defendant in this matter.

28
          [2]AR refers to the Administrative Record, which was delivered to the undersigned upon the
    Commissioner's filing of her Answer (Dkt. #9) on July 27, 2012.

1    On March 1, 2012, Plaintiff filed the Complaint (Dkt. #1) in federal court, seeking judicial

2    review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  The Commissioner filed her

3    Answer (Dkt. #9) on July 27, 2012.  Plaintiff filed a Motion for Remand (Dkt. #20) on February 4,

4    2013.  The Commissioner filed a Cross-Motion to Remand and Opposition (Dkt. #23) on April 3, 2013.

5    Plaintiff filed a Reply (Dkt. #27) on May 15, 2013.  The court has considered the Motion to Remand,

6    the Opposition, the Cross-Motion, and the Reply.

7                                           **DISCUSSION**

8    **I.    Judicial Review of Disability Determination**

9        District courts review administrative decisions in social security benefits cases under 42  U.S.C.

10   § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  The statute provides that after

11   the Commissioner of Social Security has held a hearing and rendered a final decision, a disability

12   claimant may seek review of the Commissioner's decision by filing a civil lawsuit in federal district

13   court in the judicial district where the disability claimant lives.  *See* 42 U.S.C. § 405(g).  That statute

14   also provides that the District Court may enter, "upon the pleadings and transcripts of the record, a

15   judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with

16   or without remanding the cause for a rehearing."  The Ninth Circuit reviews a decision of a District

17   Court affirming, modifying, or reversing a decision of the Commissioner de novo.  *Batson v.*

18   *Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

19       The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42

20   U.S.C. § 405(g); *see also Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the

21   Commissioner's findings may be set aside if they are based on legal error or not supported by

22   substantial evidence.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also*

23   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence

24   as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

25   mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

26   Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005).  In determining

27   whether the Commissioner's findings are supported by substantial evidence, the court "must review the

28   administrative record as a whole, weighing both the evidence that supports and the evidence that

                                                 2

1    detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998);

2    *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

3         Under the substantial evidence test, the Commissioner's findings must be upheld if supported by

4    inferences reasonably drawn from the record.  *Batson,* 359 F.3d at 1193.  When the evidence will

5    support more than one rational interpretation, the court must defer to the Commissioner's interpretation.

6     *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Flaten v. Sec'y of Health and Human*

7    *Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995).  Consequently, the issue before the court is not whether the

8    Commissioner could reasonably have reached a different conclusion, but whether the final decision is

9    supported by substantial evidence.

10        It is incumbent on the ALJ to make specific findings so that the court does not speculate as to

11   the basis of the findings when determining if the Commissioner's decision is supported by substantial

12   evidence.  Mere cursory findings of fact without explicit statements as to what portions of the evidence

13   were accepted or rejected are not sufficient.  *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

14   The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate,

15   should include a statement of subordinate factual foundations on which the ultimate factual conclusions

16   are based." *Id.*

17   **II.    Disability Evaluation Process**

18        The claimant has the initial burden of proving disability.  *Roberts v. Shalala*, 66 F.3d 179, 182

19   (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate

20   an "inability to engage in any substantial gainful activity by reason of any medically determinable

21   physical or mental impairment which can be expected . . . to last for a continuous period of not less than

22   12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant must provide "specific medical evidence" to

23   support his or her claim of disability.  If a claimant establishes an inability to perform his or her prior

24   work, the burden shifts to the Commissioner to show that the claimant can perform other substantial

25   gainful work that exists in the national economy.  *Batson*, 157 F.3d at 721.

26        The ALJ follows a five-step sequential evaluation process in determining whether an individual

27   is disabled.  *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert,* 482 U.S. 137, 140 (1987).  If at any

28   step, the ALJ makes a finding of disability or non-disability, no further evaluation is required.  *See* 20

3

1  C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The

2  first step requires the ALJ to determine whether the individual is currently engaging in substantial

3  gainful activity ("SGA").  *See* 20 C.F.R. §§ 404.1520(b) and 416.920(b).  SGA is defined as work

4  activity that is both substantial and gainful; it involves doing significant physical or mental activities,

5  usually for pay or profit.  *See* 20 C.F.R. §§ 404.1572(a)-(b) and 416.972(a)-(b).  If the individual is

6  currently engaging in SGA, then a finding of not disabled is made.  If the individual is not engaging in

7  SGA, then the analysis proceeds to the second step.

8        The second step addresses whether the individual has a medically-determinable impairment that

9  is severe or a combination of impairments that significantly limits him or her from performing basic

10  work activities.  *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).  An impairment or combination of

11  impairments is not severe when medical and other evidence establish only a slight abnormality or a

12  combination of slight abnormalities that would have no more than a minimal effect on the individual's

13  ability to work.  *See* 20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings ("SSRs") 85-28, 96-

14  3p, and 96-4p.[3]  If the individual does not have a severe medically-determinable impairment or

15  combination of impairments, then a finding of not disabled is made.  If the individual has a severe

16  medically-determinable impairment or combination of impairments, then the analysis proceeds to the

17  third step.

18        Step three requires the ALJ to determine whether the individual's impairments or combination

19  of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404,

20  Subpart P, Appedix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and

21  416.926.  If the individual's impairment or combination of impairments meet or equal the criteria of a

22  listing and meet the duration requirement (20 C.F.R. §§ 404.1509 and 416.909), then a finding of

23  disabled is made.  *See* 20 C.F.R. §§ 404.1520(h) and 416.920(h).  If the individual's impairment or

24  */ / /*

25

---

26      [3] SSRs are the SSA's official interpretations of the Act and its regulations.  *See Bray v. Comm'r*

27  *of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1).  They are entitled to some deference as long as they are consistent with the Act and regulations.  *See Bray,* 554

28  F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

1 combination of impairments does not meet or equal the criteria of a listing or meet the duration

2 requirement, then the analysis proceeds to the next step.

3       Before considering step four of the sequential evaluation process, the ALJ must first determine

4 the individual's residual functional capacity ("RFC").  *See* 20 C.F.R. §§ 404.1520(e) and 416.920(e).

5 RFC is a function-by-function assessment of the individual's ability to do physical and mental work-

6 related activities on a sustained basis despite limitations from impairments.  *See* SSR 96-8p.  In making

7 this finding, the ALJ must consider all the relevant evidence such as symptoms and the extent to which

8 they can reasonably be accepted as consistent with the objective medical evidence and other evidence.

9 *See* 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p and 96-7p.  To the extent that statements about

10 the intensity, persistence, or functionally limiting effects of pain or other symptoms are not

11 substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the

12 individual's statements based on a consideration of the entire case record.  The ALJ must also consider

13 opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs

14 96-2p, 96-5p, 96-6p, and 06-3p.

15       The fourth step requires the ALJ to determine whether the individual has the RFC to perform his

16 past relevant work ("PRW").  *See* 20 C.F.R. §§ 404.1520(f) and 416.920(f).  PRW means work

17 performed either as the individual actually performed it or as it is generally performed in the national

18 economy within the last fifteen years or fifteen years prior to the date that disability must be established.

19 In addition, the work must have lasted long enough for the individual to learn the job and to perform it

20 as SGA.  *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), and 416.965.  If the individual has the

21 RFC to perform his past work, then a finding of not disabled is made.  If the individual is unable to

22 perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and final step.

23       Step five requires the ALJ to determine whether the individual is able to do any other work

24 considering his residual functional capacity, age, education, and work experience.  20 C.F.R.

25 §§ 404.1520(g) and 416.920(g).  If he or she can do other work, then a finding of not disabled is made.

26 Although the individual generally continues to have the burden of proving disability at this step, a

27 limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is

28 / / /

1   responsible for providing evidence that demonstrates that other work exists in significant numbers in

2   the national economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42.

3   **II.    Factual Background.**

4         **A.    Testimony at Administrative Hearing.**

5         Plaintiff appeared and testified before ALJ John Heyer in Las Vegas, Nevada, on September 16,

6   2010, with her attorney, Noel Anschutz.  AR 54-69.  Vocational Expert Jeffrey Malmuth also appeared

7   and testified.  *Id.*

8         Plaintiff was born on October 14, 1966, and at the time of the administrative hearing, she was

9   forty-three years old.  AR 57.  Plaintiff has a valid driver's license.  AR 57.  Plaintiff lives with her

10  daughter and husband.  AR 65.  At the time of the hearing, her husband was employed as a lube tech,

11  working on cars.  AR 65, 66.  They were married on July 20, 2010.  AR 226.  Plaintiff quit school in the

12  ninth grade.  AR 66.  Before she quit, she was enrolled in special education classes.  *Id.*

13        Plaintiff was last employed in 2007 as a cook's helper.  AR 57.  She worked through a

14  temporary agency and did that job on-and-off for a couple of years.  *Id.*  Plaintiff testified she stopped

15  working in 2007 because she had a baby and needed to take care of her.  AR 58.  Prior to that, Plaintiff

16  was employed in a service deli at Albertson's grocery store for three years  AR 58.  In her previous

17  employment as both a cook's helper and service deli worker, Plaintiff had not yet been diagnosed as

18  bipolar, but she suffered from mood swings.  AR 65.  She testified that she sometimes had trouble

19  following directions, and her boss had to tell her to do the same thing over and over again and would

20  become frustrated.  *Id.*  She had trouble keeping up with her work, but she did not have trouble getting

21  along with others.  *Id.*

22        Plaintiff testified she is unable to work because of her mental issues, including bipolar disorder

23  with mood swings, inability to concentrate, forces talking to her, all of which had been occurring for

24  two years prior to the hearing.  AR 58-59.  She explained that her disability claim is limited to her

25  mental condition and not any physical limitation.  AR 59.  Plaintiff takes Abilify and Geodon for her

26  mental issues, and she testified that those medications help.  AR 60.  Plaintiff also testified that she has

27  diabetes, took diabetes medication six times per day, and the medication makes her drowsy sometimes.

28  / / /

1  AR 59.  However, she also testified that she napped because of the baby and not her medication.  AR

2  62.  She explained that she took her medication before bed because of the side effect.  *Id.*

3          She explained that her bipolar disorder tends more toward depression than mania.  AR 62.  Her

4  depression causes her to not want to do anything.  *Id.*  She testified that she must drag herself out of bed

5  because of her child care obligations.  AR 64.  She was tired, worried a lot, and suffered from delusions

6  where she thinks about things that are not true.  AR 62.  She testified that she hears voices sometimes,

7  but she could not explain further.  AR 62-63.  Although Plaintiff has thought about suicide, she would

8  not attempt it because "that's selfish . . . if I take my life and leave my child."  AR 64.  Plaintiff testified

9  that "half the reason" she cannot work is her obligation to care for her child, and the other half is

10  because of her mental issues.  AR 60.

11          On a normal day, Plaintiff testified that she wakes up, feeds her child, feeds herself, cleans the

12  house, does other chores, and watches TV.  AR 60.  Plaintiff sometimes reads, but she has trouble

13  because of a learning disability that causes her to struggle with comprehension and pronunciation.  AR

14  61, 63.  Plaintiff also has difficulty with math, particularly subtraction and multiplication.  AR 64.

15          Plaintiff does not have friends come over to visit, but she does talk on the phone.  AR 63.

16  Plaintiff testified that her mother sometimes helps her with the housework.  AR 66.  She sometimes

17  shops at the grocery store.  *Id.*  Plaintiff attends church twice per month.  AR 63.

18          Plaintiff admitted a ten-year history of crack-cocaine abuse.  AR 61.  She last used crack cocaine

19  six months before the administrative hearing, but she had been sober for eighteen months before that.

20  *Id.*  Plaintiff explained her relapse was caused by depression.  *Id.*  Her last alcohol use was also six

21  months prior to the administrative hearing.  *Id.*  That relapse lasted approximately four months.  AR 64.

22  While Plaintiff was using drugs and alcohol, she left her baby with her parents.  AR 65.  At the time of

23  the administrative hearing, Plaintiff was attending Narcotics Anonymous and Alcoholics Anonymous

24  meetings.  AR 63.

25          Jeff Malmuth, a vocational expert, also testified.  AR 67.  He described Plaintiff's past

26  employment as a cook's helper and a delicatessen counter worker as medium work.  AR 67-68.  The

27  ALJ posed the following hypothetical: whether a person with a fifty-pound lifting limitation who could

28  / / /

7

1    sit, stand, and walk six hours of an eight-hour work day could perform Plaintiff's past work.  AR 68.

2    Mr. Malmuth testified that such a person could perform both of Plaintiff's past jobs.  *Id.*

3        **B.    Plaintiff's Medical Records.**

4            **1.    Vocational Assessment Report.**

5        On January 29, 2009, Plaintiff was evaluated to determine her work-related aptitudes and

6    interests.  AR 184.  The evaluation was administered by Alton S. Trammell.  *Id.*  Plaintiff reported the

7    following things keep her from obtaining and retaining employment: she has no new job skills, she

8    lacks a high school diploma or GED, she has problems filling out job applications, she has low self-

9    esteem, she is lazy, late for work, and has been convicted of a felony.  *Id.*  She indicated she has no

10   physical restrictions from her doctor preventing her from working.  *Id.*  Additionally, if she were

11   employed, she would need a ride to work via public transportation or from a friend or relative, or she

12   would have to walk.  *Id.*

13       The evaluation revealed Plaintiff has limited word reading, sentence comprehension, spelling,

14   and math computation skills.  *Id.*  Plaintiff's skills in these areas were between a third and fifth grade

15   level.  AR 186.  Mr. Trammell found Plaintiff was cooperative, put forth effort, and followed some

16   written and all verbal directions.  *Id.*  Plaintiff's Beta IQ was sixty-five.  *Id.*

17           **2.    Dr. Ron Zedek.**

18       Plaintiff saw Dr. Zedek on April 10, 2009, for her first psychiatric appointment.  AR 258.  She

19   reported suffering from mood swings, irritability, interpersonal aggressiveness, and rage attacks.  *Id.*

20   She admitted to a problem with crack cocaine and alcohol addiction in the past, but reported she had

21   been sober for eighteen months prior to this appointment.  *Id.*  She reported she did not suffer from

22   auditory hallucinations.  *Id.*  Dr. Zedek started Plaintiff on Abilify to treat Plaintiff's bipolar disorder.

23   *Id.*  Dr. Zedek also noted Plaintiff's history of diabetes mellitus.  AR 320.

24       On April 17, 2009, Plaintiff saw Dr. Zedek, who noted she was tolerating Abilify well.  AR 257.

25   At that appointment, Plaintiff discussed how helpful the medication was and reported it made her mood

26   swings considerably better.  *Id.*  She indicated she was still depressed, but less so.  *Id.*  Dr. Zedek and

27   Plaintiff discussed other treatment options, but Plaintiff decided she wanted to continue with Abilify.

28   *Id.*

On May 1, 2009, Dr. Zedek filled out a Report of Illness, Incapacity, or Disability for the State of Nevada Department of Health and Human Services regarding Plaintiff.  AR 247.  He indicated that Plaintiff suffered from Bipolar Disorder–Severe Mood Disorder, and this condition caused on-going impairment and was a disability.  *Id.*  He wrote that Plaintiff could possibly need to be hospitalized in the future, and she was very depressed and irritable.  *Id.*  Plaintiff also saw Dr. Zedek on May 1, 2009, and he noted she was still having problems with mood swings and irritability.  AR 256.  He wrote that Plaintiff indicated the medication and psychotherapy are helping her by "attenuating or mitigating or diminishing the intensity of these moods swings."  *Id.*  Dr. Zedek observed that Plaintiff's mood was less depressed than it had been previously.  *Id.*

Plaintiff saw Dr. Zedek on May 8, 2009.  He indicated there were still "some significant mood swings and irritability, but they are less intense than they used to be[,] and they have been reduced considerably since Plaintiff was put on Abilify."  AR 255.  Dr. Zedek also observed Plaintiff was less depressed.  *Id.*

Dr. Zedek's treatment notes from Plaintiff's appointments on May 1, 2009; May 8, 2009; May 15, 2009; May 22, 2009; June 5, 2009; June 12, 2009; July 3, 2009; July 17, 2009; July 31, 2009; August 14, 2009, reflect Plaintiff saw Dr. Zedek for routine psychotherapy.  AR 251-254, 308-318. Dr. Zedek's treatment notes from those appointments reflect that Plaintiff was suffering from residual mood swings and irritability without suicidal or homicidal thoughts or ideation.  *Id.*  He observed that Plaintiff had "well-delineated futuristic thoughts and plans."  *Id.*  She was continued on Abilify 10 mg. *Id.*  Plaintiff did not report any side effects from the medication at these appointments.  *Id.*

Plaintiff saw Dr. Zedek for routine psychotherapy on September 4, 2009.  AR 307.  Dr. Zedek ordered metabolic lab work, including a fasting glucose and a lipid panel.  *Id.*  At Plaintiff's October 2, 2009, visit, she reported that she had not gotten the lab work Dr. Zedek ordered done.  AR 306. Plaintiff was also directed to see her primary care physician because she was obese and likely suffered from metabolic abnormalities and aberrations.  *Id.*

Plaintiff saw Dr. Zedek for supportive psychotherapy on October 16, 2009; October 30, 2009; November 13, 2009; November 24, 2009; December 4, 2009.  AR 301-305.

1    At Plaintiff's December 18, 2009, appointment with Dr. Zedek, she informed him that she had

2    stopped taking Abilify on December 16, 2009, because her blood sugar level was high, and she refused

3    to take any psychiatric medication because of her elevated blood sugar.  AR 300.

4    Plaintiff saw Dr. Zedek on January 15, 2010, and at that time, she refused psychiatric

5    medication until her blood sugar was lowered.  AR 299.  On January 29, 2010, Plaintiff reported to Dr.

6    Zedek that her blood glucose level was under better control, and Dr. Zedek restarted her on Abilify

7    because Plaintiff's mood swings and irritability had increased.  AR 298.  She was also started on Xanax

8    for anxiety.  *Id.*

9    Dr. Zedek's treatment notes from a March 5, 2010, appointment with Plaintiff report that

10   Plaintiff was not compliant with keeping her appointments, and she ran out of medication.  AR 297.  At

11   this appointment, Dr. Zedek restarted her on Abilify.  *Id.*   Plaintiff saw Dr. Zedek for routine

12   psychotherapy, psychoeducation, and pharmacoeducation on March 12, 2010; March 19, 2010; March

13   26, 2010; April 9, 2010; April 23, 2010.  AR 292-296.  On May 19, 2010; June 2, 2010; and June 16,

14   2010, Plaintiff saw Dr. Zedek.  His progress notes indicate Plaintiff continued to suffer "<u>mild</u>" mood

15   swings and irritability.  AR 288-291 (emphasis in original).

16                          **3.      Red Rock Medical Group**.

17   Plaintiff saw Dr. Jeffrey Crudo for a general physical examination on April 7, 2009.  AR 348.

18   She reported that she suffered gestational diabetes during 2008.  *Id.*

19   Plaintiff saw Dr. Jeffrey Crudo on March 29, 2010, for a follow-up appointment regarding

20   chronic pain.  AR 336.  The doctor's notes reflect that Plaintiff suffered anxiety for which she was

21   seeing a psychiatrist who prescribed Xanax.  *Id.*  She requested and was given Xanax and Lortab.  AR

22   338.

23   On April 21, 2010, Plaintiff saw Dr. Crudo regarding her diabetes.  The doctor noted Plaintiff's

24   blood sugars were still running "a little high fasting," but they were slowing improving with

25   medication.  AR 329.  She was given a refill of Lortab for arthritis pain in her joints.  *Id.*

26   Plaintiff was seen by Jesse Connors, a physician's assistant, on July 13, 2010, for prescription

27   refills of her diabetes medication, Xanax, and Lortab.  AR 323.  She did not report Abilify as a current

28   medication, and there is no indication in these medical records that she suffered from bipolar disorder.

10

1   *Id.*  The physician's assistant noted that Plaintiff did have "depression, flight of ideas, and

2   hallucinations."  AR 324.  She reported that her blood sugar levels are 140-145 on average, and she was

3   not having problems at that time.  AR 323.

4         **4.**   **Pastora Roldan, Ph.D.**

5         On July 6, 2009, Dr. Pastora Roldan completed a Psychiatric Review Technique Form

6   ("PRTF"), for Plaintiff.  She found Plaintiff suffered from bipolar syndrome with a history of episodic

7   periods manifested by the full symptomatic picture of both manic and depressive syndromes.  AR 263.

8   She observed the following functional limitations existed as a result of Plaintiff's bipolar disorder: mild

9   restrictions of activities of daily living; mild difficulties maintaining social functioning; moderate

10  difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation

11  lasting an extended duration.  AR 270.  None of these limitations were found to satisfy the functional

12  criteria of listing 12.04(c).  *Id.*  Dr. Roldan also found no evidence to establish the presence of the C

13  criteria of the listings.  AR 271.

14        Dr. Roldan concluded that Plaintiff would be able to: (a) understand and remember work

15  locations and procedures of a simple, routine nature; (b) maintain concentration and attention in two-

16  hour increments and would be able to sustain an eight-hour per day/forty-hour per week work schedule

17  on a sustained basis; (c) relate to and accept direction from supervisors and remain socially appropriate

18  with co-workers and the public without being distracted by them; and (d) travel, avoid workplace

19  hazards, respond to change, and set realistic goals independently.  AR 276.

20        **5.**   **Karen Ying, M.D.**

21        On July 23, 2009, Dr. Karen Ying reviewed Dr. Roldan's PRTF.  AR 278-280.  She agreed with

22  Dr. Roldan's findings.  AR 278.  She observed Plaintiff had some residual mood swings, but found

23  overall, they were improved with medication.  AR 279.  She also found Plaintiff was fairly active in

24  socialization and chores.  *Id.*  She concluded Dr. Roldan's assessment was reasonable.  *Id.*

25        On July 19, 2009, Plaintiff responded to a Mental Health Questionnaire that she heard voices

26  sometimes which tell her to do bad things.  AR 284.  She reported that she ignored the voices.  *Id.*

27  */ / /*

28  */ / /*

## III.     The ALJ's Decision.

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920 and issued an unfavorable decision on November 1, 2010.  AR 17-24.  At step one, the ALJ determined that Plaintiff had not engaged in SGA since May 20, 2009.  AR 19.  At step two, he determined Plaintiff suffered from two severe impairments–diabetes mellitus and obesity–both of which caused more than minimal functional limitations.  *Id.*  He found Plaintiff's bipolar disorder with depression, however, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and was therefore not severe.  *Id.*  At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ determined Plaintiff had the RFC to perform a full range of medium work as defined by 20 C.F.R. 416.967(c).  AR 20.  The ALJ found that although Plaintiff's medically-determinable impairments could be reasonably found to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC finding.   The ALJ found Dr. Zedek's opinion that Plaintiff's bipolar disorder with depression and irritability rendered her unable to work was conclusory and inconsistent with Dr. Zedek's own treatment notes, and made a finding reserved for the Commissioner.  AR 21-22.  Therefore, the ALJ afforded Dr. Zedek's little weight.  *Id.*  The ALJ similarly afforded the State agency consultant's opinion limited weight because the record and Plaintiff's testimony at the administrative hearing indicated that Plaintiff's activities of daily living, social functioning, and concentration, persistence, and pace were no more than mildly limited by her alleged disabilities.  AR 23.  The ALJ further found that based on the record and Plaintiff's testimony, she had no episodes of decompensation, and her mental impairment was non-severe.

At step five, the ALJ found that Plaintiff was capable of performing her PRW as a cook's helper and service deli counter worker.  AR 23-24.  The ALJ relied on the VE's testimony that an individual who could lift fifty pounds and sit, stand, and walk for six hours in each eight hour day would be able to perform both of Plaintiff's past jobs.  AR 24.  The ALJ found Plaintiff had the RFC to perform her

/ / /

1   PRW as it is actually and generally performed.  Based on all of these findings, the ALJ concluded that

2   Plaintiff was not disabled and denied her application for SSI.

3   **IV.      The Parties' Positions.**

4            Plaintiff seeks reversal and remand on the following three grounds: (a) the ALJ failed to

5   consider whether Plaintiff met the listing at 12.05C; (b) the ALJ failed to consider all impairments at

6   step two of his analysis; and (c) the ALJ improperly rejected the opinion of Plaintiff's treating

7   psychiatrist, Dr. Zedek.   First, Plaintiff asserts that Plaintiff meets the medical criteria of listing

8   12.05C because her IQ is sixty-five and is coupled with the severe impairment of bipolar disorder.

9   Plaintiff asserts the ALJ erred by not considering this listing and by finding Plaintiff's bipolar disorder

10  was a nonsevere medical impairment.  Second, at step two, the ALJ should have considered Plaintiff's

11  learning disability in conjunction with her other medically-determinable impairments.  Relying on

12  *Keyser v. Commissioner of Social Security,* 648 F.3d 721 (9th Cir. 2011), Plaintiff also argues the ALJ

13  failed to complete a PRTF or engage in the required analysis, and therefore, remand is required.  Third,

14  Plaintiff contends the ALJ improperly rejected Dr. Zedek's opinion.  Plaintiff argues that Dr. Zedek's

15  progress notes indicate Plaintiff suffered from mood swings and irritability throughout the course of

16  their treatment relationship.  Additionally, the ALJ should have developed the record more fully with

17  respect to Dr. Zedek's opinion.  Because the ALJ improperly rejected Dr. Zedek's opinion, Plaintiff

18  asserts that evidence must be credited as true as a matter of law.  Plaintiff therefore seeks reversal and

19  remand for an award of benefits.

20           The government responds that Plaintiff does not meet listing 12.05C.  In order to qualify,

21  Plaintiff must have shown that her intellectual disability began before she reached age twenty-two.

22  There is no evidence in the record to support Plaintiff's assertion except for her testimony that she was

23  in special education classes in school.  Additionally, when Plaintiff was asked about the onset of her

24  disabling conditions, she testified that they had "been going on for about two years now."  AR 59.  The

25  government argues that the record shows that Plaintiff stopped working because of her obligations to

26  care for her daughter, not because of any medical disability.  Furthermore, the government contends that

27  the only IQ evaluation in the record is from an unacceptable medical source under the relevant

28  regulations.  Therefore, Trammel's report is insufficient to establish Plaintiff's IQ.  Even if it were from

1   an acceptable source, the government maintains the test was unreliable because it did not include the

2   appropriate narrative explanation, it was a performance test rather than a broad-based verbal and non-

3   verbal test, and it was not the appropriate test to administer to a native English speaker like Plaintiff.

4         Second, the government asserts that the ALJ properly found Plaintiff did not have any severe

5   mental impairments.  The government contends that Plaintiff does not dispute the ALJ's finding that

6   her bipolar was nonsevere, only that the ALJ should have considered whether Plaintiff's learning

7   disability was a severe impairment, and as set forth above, Plaintiff did not provide any evidence from a

8   medically-acceptable source that she suffered from a learning or intellectual disability.  Furthermore,

9   the government asserts that *Keyser* is distinguishable from this case because here, the ALJ did discuss

10  the PRTF factors.  Specifically, the ALJ analyzed Plaintiff's mental functioning in her daily activities;

11  social functioning; concentration, persistence, or pace; and episodes of decompensation.  Alternatively,

12  even if it was error for the ALJ to find Plaintiff's intellectual disability was nonsevere, that error was

13  harmless because the ALJ took Plaintiff's learning disability into account when making the RFC

14  determination.

15        Third, the government argues that the ALJ properly rejected Dr. Zedek's opinion and had no

16  duty to further develop the record.  The ALJ articulated multiple permissible reasons for rejecting Dr.

17  Zedek's opinion–namely, that it was conclusory and inconsistent with Dr. Zedek's own treatment notes.

18  Dr. Zedek's opinion that Plaintiff was unable to work due to bipolar disorder was made on a check-the-

19  box form and his only explanation was "severe mood disorder–very depressed and irritable."  AR 249.

20  Additionally, Dr. Zedek's treatment notes show that Plaintiff's condition was improved upon taking

21  medication, and she only suffered from mild mood swings and irritability.  Dr. Zedek never noted any

22  serious deterioration or decompensation, and Plaintiff's Abilify prescription was consistent throughout

23  the treatment notes.  Thus, the government argues, Dr. Zedek's treatment notes only reflect a mild

24  mental impairment that is well-controlled with treatment.  Additionally, Dr. Zedek's opinion that

25  Plaintiff could not work is a finding reserved for the Commissioner pursuant to *Nyman v. Heckler,* 799

26  F.2d 528, 531 (9th Cir. 1985) and 20 C.F.R § 416.927(d).  Finally, Plaintiff did not articulate any basis

27  requiring the ALJ to recontact Dr. Zedek.  Therefore, the government requests the Motion to Remand

28  be denied, and the Cross-Motion to Affirm be granted.

1    Plaintiff replies that the evidence she was in special education classes is enough to show her

2    intellectual disability began before age twenty-two.  Additionally, Plaintiff relies on cases from the

3    Eleventh, Eighth, and Fourth Circuits to establish that proof of onset of an intellectual disability before

4    age twenty-two is not absolutely required.  She reiterates that the ALJ's findings at step two are

5    insufficient.

6    **V.    Analysis and Findings**

7    Reviewing the record as a whole, weighing both the evidence that supports and the evidence that

8    detracts from the ALJ's conclusion, the court finds the ALJ's decision is supported by substantial

9    evidence, and the ALJ did not commit legal error.

10    It is undisputed that Plaintiff was not engaging in substantial gainful activity at the time she

11    applied for disability benefits.  Plaintiff argues the ALJ erred in steps two through five of the sequential

12    evaluation process.

13    **A.    ALJ's Consideration of All Impairments at Step Two.**

14    At step two of the disability determination, an ALJ must decide whether the claimant has a

15    medically severe impairment or combination of impairments and is bound by 20 C.F.R. § 404.1520a**.**

16    *See* 20 C.F.R. § 404.1520a.  That regulation requires those reviewing a disability application to follow a

17    special psychiatric review technique.  *Id.*  Specifically, the review must determine whether an applicant

18    has a medically determinable mental impairment, rate the degree of functional limitation for four

19    functional areas,[4] determine the severity of the mental impairment, and then, if the impairment is severe

20    proceed to step three to determine if the impairment meets or exceeds a specific listed mental disorder.

21    *Id.*

22    At the first two levels of review, this technique is documented in a PRTF.  *Id.*  At hearings

23    before an ALJ, however, the Commissioner must "document application of the technique in the

24    decision."  *Id.*  The ALJ's written decision must incorporate the pertinent findings and conclusions

25    based on the technique and must include a specific finding as to the degree of limitation in each of the

26

27    _____

28    [4]The four functional areas are: (a) daily activities; (b) social functioning; (c) concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. § 416.920a(b), (c)(3).

1  functional areas. *Id.* The regulations contemplate that an ALJ's decision should contain a "narrative

2  rationale" instead of the "checklist of . . . conclusions" found in a PRTF. *Keyser,* 648 F.3d at 725

3  (citing 65 Fed. Reg. 50746-01, 50757-58) (Aug. 21, 2000)).

4        Here, the ALJ conducted the analysis required by 20 C.F.R. § 404.1520a. He considered the

5  signs and symptoms of Plaintiff's bipolar disorder, finding it did not cause more than minimal

6  limitation in her ability to perform basic mental work activities. In making that finding, he specifically

7  considered the four broad functional areas set out in the disability regulations for evaluating mental

8  disorders and in section 12.00C of Listing of Impairments. The ALJ concluded at step two that because

9  Plaintiff's bipolar disorder causes "no more than 'mild' limitation in any of the first three functional

10  areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it

11  is nonsevere." AR 19.

12        Plaintiff contends the ALJ did not consider Plaintiff's learning disability at step two, and this is

13  "remandable" error. Plaintiff has not cited any evidence from a medically-acceptable source suggesting

14  she qualifies for disability benefits due to a learning or intellectual disability. None of her treating

15  physicians cite a learning disability in their treatment notes. She did not list an intellectual disability in

16  her original application for disability benefits. AR 152. Nonetheless, the ALJ considered Plaintiff's

17  cognitive ability. He cited the vocational rehabilitation evaluation Plaintiff underwent with Mr.

18  Trammel in 2009, finding Plaintiff "tested in the low to lower extreme range, suggesting mental

19  deficiency and possible learning disorder." AR 22-23. He found that, according to Mr. Trammel's

20  evaluation, Plaintiff's test scores, past work experience, and interests matched her with occupations

21  which included her PRW as a kitchen helper and food service worker. AR 23. Finally, he found that

22  Plaintiff's work history demonstrated that despite her low test scores, she could work above substantial

23  gainful activity levels. *Id.*

24        The ALJ also considered the PRTF conducted in July 2009. *Id.* He afforded limited weight to

25  the consultant's evaluation. He agreed with the consultant's conclusion that Plaintiff is mildly limited

26  in her activities of daily living and social functioning but found that her concentration, persistence, and

27  pace were no more than mildly impaired. *Id.* The ALJ based this conclusion on the fact that Plaintiff

28  was able to understand and fully respond to all questions posed of her at the hearing and enjoyed

1  reading the Bible, books and magazines, and watching movies on television.  He concluded her memory

2  and concentration were not as impaired as she claimed.  *Id.*    The ALJ concluded that based upon the

3  record as a whole, and considering Plaintiff's testimony at the hearing, "she has no more than mild

4  limitation in activities of daily living, social functioning and concentration, persistence and pace and no

5  episodes of decompensation and  . . . her mental impairment is nonsevere." *Id.*  Although the ALJ did

6  not extensively discuss Plaintiff's cognitive impairments in his findings at step two, he thoroughly

7  discussed the evidence supporting his finding elsewhere in the opinion.  An ALJ is required to discuss

8  and evaluate evidence that supports his conclusion; he is not required to do so under any specific

9  heading.  *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001).  The court finds the ALJ considered

10  Plaintiff's learning disability.

11       **B.     ALJ's Analysis at Step Three: Listing 12.05C.**

12       The ALJ properly found that Plaintiff did not have an impairment or combination of

13  impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404,

14  Subpart P, Appendix 1.  Plaintiff asserts she met the criteria for disability under Listing 12.05 for

15  mental retardation.  That section defines mental retardation as "a significantly subaverage general

16  functioning with deficits in adaptive functioning initially manifested during the developmental period;

17  i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R.

18  § 416.920(a)(4)(iii) at Listing 12.05.  To qualify as mentally retarded, subsection C of the Listing, an

19  individual must have: (a) a valid verbal, performance, or full scale IQ of 60-70; and (b) a physical or

20  other mental impairment imposing an additional and significant work-related limitation of function.  *Id.*

21  Plaintiff bears the burden of establishing she meets *all* of the criteria of the listing.  *See Lewis v. Apfel,*

22  232 F.3d 503, 514 (9th Cir. 2001); *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990).  An impairment that

23  manifests only some of these criteria, no matter how severely, does not qualify.  *See Lewis,* 232 F.3d at

24  514,

25       Here, Plaintiff has not met her burden of establishing she meets the requirements of listing

26  12.05C.  There is nothing in the record to suggest any intellectual disability began before age twenty-

27  two.  To the contrary, Plaintiff's initial application for SSI benefits explicitly represents she was *not*

28  disabled prior to age twenty-two.  AR 112.  The only evidence in the record to support Plaintiff's

1    position is her representation that she attended special education classes for two years during middle

2    school and her testimony of the same nature.  AR 66, 157.  She describes the program as one in which

3    she "went to a special room with other disabled students."  A.R. 157.  An IQ assessment made after

4    Plaintiff's fortieth birthday and enrollment in special education classes during middle school,

5    considered in light of the entire record, are insufficient to show Plaintiff was mentally impaired before

6    age twenty-two.

7            Additionally, Plaintiff did not provide evidence from an acceptable medical source that she

8    satisfied the criteria of Listing 12.05C.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00 at

9    (D)(1).  The only evidence in the AR to establish Plaintiff's IQ comes from a vocational assessment

10   report prepared by Alton S. Trammel.  Mr. Trammel appears to have a master's degree and is a certified

11   rehabilitation counselor.  Mr. Trammel does not fit in any of the categories identified in the regulations

12   as an acceptable medical source.  He is not a licensed physician, a licensed or certified psychologist, an

13   otherwise licensed or certified individual with a title "who perform[s] the same function as a school

14   psychologist in a school setting, for purposes of establishing mental retardation, learning disabilities,

15   and borderline intellectual functioning," an optometrist, podiatrist, or qualified speech language

16   pathologist.  20 C.F.R. § 416.913(a).  Accordingly, Plaintiff did not present evidence from an

17   acceptable medical source to establish any medically determinable impairment.

18           Moreover, even if Mr. Trammel were an acceptable medical source, his report does not fulfill

19   the regulatory requirements for demonstrating a valid IQ measurement.  The regulation requires a

20   narrative report to accompany the test results, and the report should "comment on whether the IQ scores

21   are considered valid and consistent with the developmental history and degree of functional limitation."

22   20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00 at (D)(6)(a).  Mr. Trammel's report does not

23   provide this analysis and instead only reports the raw and scaled scores for each test.  AR 185.  Further,

24   the regulations also provide that "it is preferable to use IQ measures that are wide in scope and include

25   items that test both verbal and performance abilities."  *Id.* at (6)(d).  Mr. Trammel only conducted a

26   non-verbal test of intellectual function designed for illiterate or non-English speaking people .  AR 185.

27   Plaintiff is not illiterate, and she speaks English.  AR 61.

28   / / /

1        Finally, in the vocational assessment report from the Nevada Department of Employment,

2  Training and Rehabilitation, Plaintiff herself reported she could not work because of "no new job skills,

3  lacking a high school diploma or GED, filling out applications, low self-esteem, lazy, late for work, and

4  [her] felony."  AR 184.  Plaintiff did not establish she had a cognitive disability before age

5  twenty-two or otherwise provide evidence from an acceptable medical source that she satisfied Listing

6  12.05C's criteria.  Therefore, the ALJ did not err in failing to consider Listing 12.05C.

7        **C.**    **ALJ's Rejection of Dr. Zedek's Opinion.**

8        Plaintiff asserts the ALJ improperly rejected the opinion of Plaintiff's treating psychiatrist, Dr.

9  Ron Zedek that Plaintiff was disabled and unable to attend training or perform work of any kind.  The

10  implementing regulations for Title II of the Social Security Act distinguish among the opinions of three

11  types of physicians: first, treating physicians; second, examining physicians (*i.e.,* physicians who

12  examine but do not treat a claimant); and third, non-examining or reviewing physicians (*i.e.,* physicians

13  who neither examine nor treat the claimant, but review the claimant's file).  *Lester v. Chater*, 81 F.3d,

14  821, 830 (9th Circuit 1995); 20 C.F.R. § 404.1527(d).  Generally, a treating physician's opinion is

15  entitled to more weight than an examining physician's, and an examining physician's opinion is entitled

16  to more weight than a reviewing physician's.  *Lester*, 81 F.3d at 830; 20 C.F.R. § 404.1527(d).  The

17  Social Security Regulations give more weight to opinions that are explained than those that are not.  20

18  C.F.R. § 404.1527(d)(3).  The Social Security Regulations also give more weight to opinions of

19  specialists concerning matters relating to their specialty over that of non-specialists.  20 C.F.R.

20  § 404.1527(d)(5).

21        The ALJ must consider all medical evidence.  *See* 20 C.F.R. § 404.1527(b).  When an ALJ

22  rejects a treating physician's opinion that is contradicted by another doctor, the ALJ must provide

23  specific, legitimate reasons based on substantial evidence in the record.  *See Valentine v. Comm'r of*

24  *Soc. Sec. Admin.,* 574 F.3d 685, 692 (9th Cir. 2009); *Ryan v. Comm'r of Soc. Sec. Admin.,* 528 F.3d

25  1194, 1198 (9th Cir. 2008).  An ALJ satisfies the burden of providing specific, legitimate reasons to

26  reject a controverted treating physician opinion where he or she sets out a "detailed and thorough

27  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

28  findings."  *Magallanes v. Bowen*, 881 F.2d 747, 757 (9th Cir. 1989).  An ALJ need not accept the

1    opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and

2    inadequately supported by clinical findings.  *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219,

3    1228 (9th Cir. 2009).

4        Here, the ALJ provided a detailed and thorough summary of the medical evidence, providing his

5    interpretation and making detailed findings.  He considered Dr. Zedek's opinion but afforded it "little

6    weight."  AR 21.  For the following reasons, the court finds the ALJ provided clear and convincing

7    reasons for rejecting Dr. Zedek's opinion which were supported by substantial evidence in the record.

8    First, the ALJ properly concluded that a treating physician's opinion on the ultimate issue of disability

9    is not binding on the Commissioner.  *See* SSR 96-5p; 20 C.F.R. § 404.1527(e)(1).  Second, the ALJ

10   acknowledged that Dr. Zedek was a treating source, but found the doctor's opinion conclusory.  AR 21-

11   22.  An ALJ is not required to accept the opinion of any physician, including a treating physician, if that

12   opinion is brief, conclusory, and inadequately supported by clinical findings.  *Bray v. Comm'r,* 554 F.3d

13   1219, 1228 (9th Cir. 2009).  Here, Dr. Zedek's May 1, 2009, opinion was mainly a check-the-box form,

14   and the only explanation he provided was "severe mood disorder–very depressed and irritable."  AR

15   249.  At the time he filled out this report, he had only seen the Plaintiff twice.

16       Third, the ALJ found this opinion was inconsistent with Dr. Zedek's treatment notes, which

17   reflect that Plaintiff improved with treatment.  AR 22.  A conflict between a treating physician's

18   opinion and his treating records is a specific and legitimate reason for the ALJ to reject a treating

19   physician's opinion.  *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008).  For example, the

20   treatment notes from May through September 2009 indicate that although Plaintiff reported residual

21   mood swings after starting Abilify, they were less intense.  *Id.*  Furthermore, she denied any side effects

22   from the medication and her prescription was not changed, either by drug or in amount, indicating she

23   was responding favorably to it.  *Id.*   Additionally, when Plaintiff stopped taking her Abilify in

24   December 2009/January 2010, she had "no new signs on exam."  AR 22.  In January, she reported

25   "some mood swings and irritability but had good future thoughts and plans."  *Id.*  When she restarted

26   Abilify, "it quickly decreased her mood swings and irritability."  *Id.*  Over the next several months, Dr.

27   Zedek's treatment notes reflect only mild mood swings and irritability.  *Id.*  Thus, the ALJ provided

28   specific and legitimate reasons to reject Dr. Zedek's opinion that Plaintiff was disabled.

1    Finally, the ALJ was not required to contact Dr. Zedek about his opinion.  An ALJ is only

2    required to contact a doctor if the doctor's report is ambiguous or insufficient to permit the ALJ to

3    make a disability determination.  *See Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) (citing

4    20 C.F.R. §§ 404.1512(e), 416.912(e); *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)).  Dr.

5    Zedek's opinion was not ambiguous, and the ALJ found the evidence in the record adequate to make a

6    determination regarding whether Plaintiff was disabled.  The AR includes over a year's worth of bi-

7    weekly progress notes from Plaintiff's visits with Dr. Zedek.  Therefore, the ALJ did not err by failing

8    to contact Dr. Zedek.

9    **VI.    <u>Conclusion</u>**

10   Judicial review of a decision to deny disability benefits is limited to determining whether the

11   decision is based on substantial evidence reviewing the administrative record as a whole.  If the record

12   will support more than one rational interpretation, the court must defer to the Commissioner's

13   interpretation.  If the evidence can reasonably support either affirming or reversing the ALJ's decision,

14   the court may not substitute its judgment for the ALJ's.  *Flaten,* 44 F.3d at 1457.  It is the ALJ's

15   responsibility to make findings of fact, drawing reasonable inferences from the record as a whole, and

16   to resolve conflicts in the evidence and differences of opinion.  Having reviewed the Administrative

17   Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's

18   conclusion, the court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C.

19   § 405(g).

20   For all of the foregoing reasons,

21   **IT IS RECOMMENDED**:

22   1.    Plaintiff's Motion to Remand (Dkt. #20) be DENIED.

23   2.    The Commissioner's Cross-Motion to Affirm (Dkt. #23) be GRANTED.

24   Dated this 19th day of June, 2013.

25

26   _____
     PEGGY A. LEEN
27   UNITED STATES MAGISTRATE JUDGE

28

21